DUBINA, Circuit Judge:
Appellant Omar Rodriguez-Lopez (“Rodriguez-Lopez”) appeals his sentence of 18 months imposed following his guilty plea for conspiracy and alien smuggling, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2)(A), respectively. Rodriguez-Lopez contends that the district court erred by misapplying USSG § 2L1.1(b)(5), which provides for a two-level enhancement when a smuggling offense “involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.” USSG § 2L1.1(b)(5). For the reasons that follow, we affirm.
*1135 I. BACKGROUND
A. Facts
On October 12, 2002, a United States Coast Guard aircraft spotted a speed boat, or “go-fast” boat, traveling northbound from Cuba toward the Florida Keys. Several Coast Guard cutters converged on the area and began tracking the vessel by radar. That evening, the Coast Guard deployed a team of officers on board a 27-foot “safe boat” to intercept the go-fast boat. The team first spotted the go-fast boat around midnight.
The Coast Guard team eventually maneuvered within 15 yards of the go-fast boat, and, with blue lights illuminated, used a megaphone to identify themselves, in both English and Spanish, and to instruct the people driving the boat to stop. The go-fast boat refused to stop, however, compelling the Coast Guard vessel to engage in a high-speed chase, at night, in three-to-four foot seas. During the chase, which lasted for approximately 20 minutes, the go-fast boat maintained a speed of at least 30 knots. In addition, the go-fast boat repeatedly made sharp turns toward the Coast Guard vessel, forcing the Coast Guard vessel to take evasive maneuvers to avoid being hit. Eventually, three Customs Service boats also entered the chase.
During the chase, Coast Guard and Customs officers observed a male suspect at the helm of the boat, later identified as Delvis Garcia-Santos (“Garcia-Santos”), Rodriguez-Lopez’s co-defendant. Rodriguez-Lopez was standing next to Garcia-Santos and appeared to be directing the movements of the vessel.
The officers also noted 22 passengers on the go-fast boat, including seven children. Officers observed these passengers being violently tossed around and bouncing into each other during the chase. Significantly, none of the people on the boat were wearing life jackets.
Eventually, Customs officers used pepper spray, a.chemical irritant, to disable Garcia-Santos, causing him to take his hands off the wheel and throttles of the go-fast boat. At that (point, Rodriguez-Lopez took the helm of the go-fast boat. Customs officials then pepper sprayed Rodriguez-Lopez as well, and Rodriguez-Lopez stopped the boat.
B. Procedural History
A federal grand jury in the Southern District of Florida returned a 23 count indictment against Rodriguez-Lopez and Garcia-Santos. Count 1 alleged that, on or about October 12, 2002, the defendants conspired to bring 22 aliens to the United States, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States. Counts 2 through 23 alleged the substantive alien smuggling offenses; each count representing a different alien. Each count in the indictment constituted a misdemean- or offense.
Garcia-Santos entered a guilty plea to Counts 1 through 3 of the indictment. After sentencing, he declined to take an appeal. Ultimately, Rodriguez-Lopez entered a plea of guilty to Counts 1 through 3 based on the same factual proffer as that of Garcia-Santos. The government agreed to dismiss the remaining counts of the indictment and to recommend that Rodriguez-Lopez receive a full three-level reduction for acceptance of responsibility as well as an additional three-level reduction because the offense, .was committed other than for profit, pursuant to USSG § 2L1.1(b)(1)(A).
Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (“PSI”), which recommended a base offense level of 12, pursuant to USSG § 2L1.1(a)(2), the guideline *1136 for alien smuggling offenses; a three-level reduction because the offense was not committed for profit, pursuant to § 2L1.1(b)(1)(A); a three-level enhancement, pursuant to § 2L1.1(b)(5), because the offense involved a substantial risk of death or serious bodily injury; and a three-level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1, resulting in a total offense level of 15.
After a joint two-day sentencing hearing, the district court made findings of fact and adopted the PSI’s recommendations, including an application of the § 2L1.1(b)(5) enhancement to both Rodriguez-Lopez and Garcia-Santos. With respect to the applicability of the § 2L1.1(b)(5) enhancement, the district court commented:
The concern that I have is the chase. That is what concerns me is that although there is no dispute that there were clearly marked vessels, duly authorized with lights and loudspeakers going instructing to stop, not only did they fail to stop, they kept at the same high rate of speed, made veering actions that required others, the law enforcement to take evasive actions. And it wasn’t once, it wasn’t twice, it was three times. And it was only after the administering of the pepper spray, which again endangered people and it had to be done twice because when the original helmsman had to step back, the other defendant stood up and took the helm and kept on going.
[R. Vol. 4 at pp. 110-11]. Additionally, the district court expressed concern that the defendants engaged United States authorities in this chase with an insufficient number of life jackets on board the vessel.[1] The district court then found that this high-speed chase, conducted in choppy seas, with no one on board wearing a life jacket, created a substantial risk of accident resulting in death.
Notwithstanding the risk of death to their passengers that the defendants created during the chase, the district court expressed concerns about applying the § 2.L1(b)(5) enhancement to Rodriguez-Lopez. The district court found that Rodriguez-Lopez was just the navigator for most of the chase and took the helm of the go-fast boat only briefly, and only after Garcia-Santos was pepper sprayed. Nonetheless, the district court concluded that the enhancement was applicable, based on its finding that Rodriguez-Lopez assumed control of the go-fast boat and continued the chase, even if only briefly, and did not stop the chase until after he was pepper sprayed as well.
The district court sentenced Rodriguez-Lopez to a term of 18 months imprisonment, the lowest possible term of imprisonment within the applicable guideline range: 12 months for Count 1, and 6 months each for Counts 2 and 3, to run concurrently with each other and consecutive to Count 1. Rodriguez-Lopez then perfected this appeal.
II. ISSUE
Whether the district court properly enhanced Rodriguez-Lopez’s sentence under USSG § 2L1.1(b)(5).
III. STANDARD OF REVIEW
With respect to sentencing guideline issues, this court reviews purely legal *1137 questions de novo, a district court’s factual findings for clear error, and, in most cases, a district court’s application of the guidelines to the facts with “due deference.” United States v. White, 335 F.3d 1314, 1317 (11th Cir.2003).[2] For a factual finding to be “clearly erroneous,” this court, “after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed.” United States v. Foster, 155 F.3d 1329, 1331 (11th Cir.1998).
IV. DISCUSSION
As an initial matter, we conclude that no merit exists in Rodriguez-Lopez’s argument that the district court should have applied USSG § 3C1.2 instead of § 2L1.1(b)(5). The sentencing guideline’s general application principles instruct the district court to apply the base offense level plus any specific offense characteristics in chapter two before applying any chapter three adjustments. See USSG § 1B1.1(b), (c). In addition, the commentary itself, which is binding, indicates that § 3C1.2 should not apply if the court has enhanced a defendant’s sentence under § 2L1.1(b)(5) “on the basis of conduct related to fleeing from a law enforcement officer.” USSG § 2L1.1, comment, (n.6); see also Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) (holding that a guideline’s application. notes are binding unless inconsistent with the Constitution, a federal statute, or the guideline itself).
We further conclude that the district court did not clearly err in its enhancement of Rodriguez-Lopez’s offense level pursuant to USSG § 2L1.1(b)(5), based on its determination that Rodriguez-Lopez and Garcia-Santos created a substantial risk of death or serious bodily injury to the 22 .Cuban nationals that, they were transporting from Cuba to the United States. The record demonstrates that the vessel sped through three-to-four foot seas at nighttime while the 22 aliens aboard the vessel were not wearing life jackets, that insufficient life jackets were available if, needed, and that the drivers attempted on several occasions to ram or shoulder pursuing vessels from the United States Coast Guard and Customs Service, refusing to stop until after botfi Rodriguez-Lopez and Garcia-Santos were exposed to pepper spray.[3]
*1138 Importantly, the applicable commentary to § 2Ll.l(b)(5) of the sentencing guidelines emphasizes that this provision applies to an array of factual scenarios and should be applied flexibly:
Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).
USSG § 2L1.1, comment, (n.6). The district court’s findings and application of the § 2L1.1(b)(5) enhancement are clearly consistent with the commentary’s instruction to apply the enhancement broadly to circumstances where alien smugglers subject others to “crowded, dangerous, or inhumane condition[s].” Id.
The application of the enhancement in this case is also consistent with the existing case law upholding the application of the § 2L1.1(b)(5) enhancement. Our circuit has addressed the enhancement in two unpublished opinions arising under similar factual scenarios, and, in both instances, we affirmed the district court’s application of the enhancement.[4] Our sister circuits have also upheld the application of the enhancement in situations analogous to circumstances of this case. For example, other courts have consistently applied the enhancement to alien smugglers who transport aliens on roadways without sufficient seats or seat belts. See, e.g., United States v. Cuyler, 298 F.3d 387, 391 (5th Cir.2002) (“Aliens who are unrestrained easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving.”); United States v. Ramirez-Martinez, 273 F.3d 903, 916 (9th Cir.2001) (holding that application of the enhancement was appropriate where the defendant transported 20 people in a van without seats or seat belts); United States v. Angwin, 271 F.3d 786, 808-09 (9th Cir.2001) (affirming application of the enhancement where aliens were transported in a crowded motor home and were not seated or wearing seat belts); United States v. Ortiz, 242 F.3d 1078, 1078-79 (8th Cir.2001) (affirming application of the enhancement when the defendant transported 23 aliens in a van equipped with seat belts for only 14). We find no material distinction between smugglers who transport aliens in motor vehicles without providing them with adequate safety measures, and the present case where Rodriguez-Lopez and Garcia-Santos operated a boat in a hazardous manner while transporting aliens who were not wearing life jackets.
In sum, the record demonstrates that the district court did not clearly err in finding that Rodriguez-Lopez’s participation in the high speed chase created a substantial risk of death or serious bodily injury to the aliens that he was transporting. Because we conclude that the district court properly applied the § 2L1.1(b)(5) *1139 enhancement, we affirm Rodriguez-Lopez’s sentence.
AFFIRMED.

. The district court commented:
"[W]hat about the fact that you are traveling at 30 knots on this type of sea in the dark with no one knowing where you are, you have 22 other human beings ... and they have no life preservers, particularly no life preservers for the children.... The facts are ... that there were several life preservers. Several usually means four or five. There were seven children. There were 22 aliens all totaled."
[R. Vol. 4 at pp. 133-34].

. Relying on dicta in United States v. Williams, 340 F.3d 1231 (11th Cir.2003), the dissent contends that we should review the district court's "detailed factual findings" de novo. See United States v. Miranda, 348 F.3d 1322, 1330 n. 8 (11th Cir.2003) (concluding that, because the holding of Williams concerned "the standard of review only for a challenge to the district court's grouping of a defendant’s offenses, ... William's remaining discussion is primarily dicta and, therefore, not binding on this Court”). However, the dissent misreads this discussion in Williams, which concerns only the appropriate "due deference” that we must accord a sentencing judge’s application of the guidelines to the facts. Contrary to the dissent's suggestion, Williams in no way contradicts our uniform precedent, which "requirfes] us to review district courts' factual findings under 'clear error' (or 'clearly erroneous') standard.” Williams, 340 F.3d at 1234. Moreover, in order to accept the dissent's position, we would have to ignore the clear and unambiguous directive of Congress that we “shall accept the findings of fact of the district court unless they are clearly erroneous.” 18 U.S.C. § 3742(e) (emphasis added). We decline to do so.

. While the dissent contends that we "mis-frame [our] entire analysis by lumping the very distinct actions of Garcia-Santos with those of Rodriguez-Lopez,” the district court found that both Garcia-Santos and Rodriguez-Lopez took the helm of the go-fast boat during the chase/ Although the record is clear that Garcia-Santos operated the boat for a longer period of time, the § 2L1.1(b)(5) enhancement contains no temporal limitation. *1138 The district court specifically found that both Garcia-Santos and Rodriguez-Lopez participated in a dangerous high speed chase until both were subdued by pepper spray. Thus, regardless of whether Garcia-Santos operated the boat for the majority of the chase, both defendants were equally responsible for “recklessly creating a substantial risk of death or serious bodily injury” to their human cargo-

. See United States v. Louis Romero-Larreinga, Nos. 02-14838 and 02-14841 (11th Cir. Feb. 24, 2003), and United States v. Cardet, No. 01-16987 (11th Cir. Dec. 16, 2002). While unpublished opinions are not binding on this court, they may nonetheless be cited as persuasive authority. United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir.2000) (citing 11th Cir. R. 36-2).