[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11899

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 12, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 06-00050-CR-FTM-29-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LUIS ZALDIVAR,
YOEL BERMUDEZ,
YENIER BROCHE ORTIZ,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(September 12, 2008)**

Before ANDERSON, BARKETT and HILL, Circuit Judges.

PER CURIAM:

Jose Luis Zaldivar appeals his conviction for conspiring to bring aliens into the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(I) and 1324 (a)(1)(A)(v)(I). Yoel Bermudez and Yenier Broche Ortiz appeal their convictions for conspiring to bring and for bringing the same aliens into the United States in violation of 8 U.S.C. §§ 1324(a)(1)(A)(I), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(A)(V)(II). Ortiz also appeals his thirty-three month sentence.

The government alleged that Zaldivar was the owner of a thirty-six foot Contender fishing boat that was used to transport thirty-nine Cuban nationals into the United States without permission. Bermudez and Ortiz were identified by three of the smuggled Cuban nationals as the operators of the boat that brought them to the United States. All three appellants make several arguments and we briefly address each in turn.

### 1. Jose Luis Zaldivar

Zaldivar first argues that the district court clearly erred in not suppressing evidence, namely fingerprints, seized from his vessel because (1) the law enforcement officer did not have probable cause to make the initial traffic stop of Zaldivar as he was driving the truck that was towing his vessel; (2) the officer's roadside search of his vessel was unlawful because the officer obtained Zaldivar's consent through his deceptive and improper assertion of legal authority to conduct

2

the search; (3) the scope of the search warrant used to search the vessel a second time did not include fingerprints; and (4) the fingerprints did not fall into the "plain view" exception to the warrant requirement because the incriminating nature of the fingerprints was not immediately apparent. Zaldivar also argues that the evidence, even with the inclusion of the fingerprint evidence, was insufficient to support a conspiracy conviction.

We find no reversible error. The district court did not err in finding that the stop of Zaldivar's truck was lawful because testimony established that his trailer tag was not visible due to the improper functioning of his tag light in violation of Fla. Stat., § 316.221(2).

We cannot consider Zaldivar's second argument that his consent to Lt. Johnson's roadside search of his vessel was involuntary because Zaldivar never raised this issue before the trial court and now makes this argument for the first time on appeal.

We reject Zaldivar's alternative contention that because fingerprints were not specifically listed on the search warrant they should have been suppressed. The evidence was lawfully obtained because it was in plain view and there was probable cause to believe that the fingerprints were evidence of a crime. Agent Mullin testified that at the time he seized the fingerprints (1) there were twenty-one

life jackets on the boat while the boat was rated for a maximum capacity of six persons; (2) food packets and water bottles were strewn on the boat; (3) many hand and palm prints were visible on the boat; (4) the items on the boat were consistent with items found on other boats used for alien smuggling; and (5) thirty-nine Cuban nationals had been discovered by the Coast Guard on Loggerhead Key.

Finally, we reject Zaldivar's argument that the evidence was insufficient to sustain his conviction for conspiracy. The fingerprints of Orestes Casanova, one of the smuggled Cuban nationals, were found on Zaldivar's boat. It was not unreasonable for the jury to have concluded that the only time they could have been placed there was in the course of being smuggled from Cuba as Casanova testified that he had never been to the United States before. In addition, he had been living in a country that has no diplomatic relations with the United States and it is not disputed that he was picked up on Loggerhead Key along with many other smuggled Cuban nationals. The evidence further established that Zaldivar had been driving in the area in the middle of the night, spending more than an hour sitting in his truck behind a convenience store where he received numerous telephone calls on his cellular phone. He also was observed pulling his boat out of the water at a public boat ramp around dawn with the assistance of two other individuals, although he claimed that he was staying at a resort with its own boat

4

ramp. On this record, we find that the jury reasonably could have concluded that Zaldivar was engaged in a conspiracy to smuggle the Cuban nationals into the United States.

## 2. Convictions of Yoel Bermudez and Yenier Broche Ortiz

We likewise find no reversible error as to Ortiz and Bermudez. First, they both argue that the district court abused its discretion in failing to sever their trials from Zaldivar, asserting that Zaldivar's defense became antagonistic toward their defenses. However, they have failed to show the necessary prejudice required under the two-part test of Zafiro v. United States, 506 U.S. 534 (1993). Initially, we note that the district court sustained almost every one of Bermudez's objections to the defense testimony he claims was antagonistic. Additionally, Bermudez and Ortiz acknowledge that mutually antagonistic defenses are not per se prejudicial and even where prejudice is shown, Rule 14 of the Federal Rules of Civil Procedure does not mandate that a severance be ordered, but rather permits the court to fashion an appropriate remedy. Id. at 538–39. We find the court's instructions to the jury were sufficient to insure that any prejudice that may have resulted from the testimony at issue did not "prevent the jury from making a reliable judgment about the guilt or innocence" of Bermudez or Ortiz.

Bermudez next argues that the district court abused its discretion in

5

permitting Agent Mullin to testify that two of the smuggled Cuban nationals, Orestes Casanova and Mayren Valdez, had positively identified Bermudez from a photographic line-up as being one of the operators of the boat that brought them from Cuba. He argues that because the witnesses testified at trial that they made these identifications under duress and did not identify Bermudez at trial, Agent Mullin's testimony about their out-of-court identifications should not have been admitted because it was hearsay.

Rule 801(d)(1)(C) provides that a statement is not hearsay where it involves the identification of a person made after the declarant observed the person and the declarant testifies and is subject to cross-examination. We have previously held that it is not an abuse of discretion for a district court to permit an officer to testify regarding a witness's identification, which occurred after the crime, when the witness could not make a positive in-court identification. United States v. Blackman, 66 F.3d 1572, 1578 n.6 (11th Cir. 1995). Here, there was no question that the witnesses had made the out-of-court identification. Both witnesses testified that they had each made the identification from a photographic line-up, and admitted signing statements that identified Bermudez. They did not deny that they had identified Bermudez. Rather, they claimed that the identification was coerced by the threat of deportation and was untrue. We find that the testimony of

6

Casanova and Valdez regarding the circumstances under which they provided an out-of-court identification of Bermudez goes to the weight of Agent Mullin's testimony and not to whether it is admissible under Rule 801(d)(1)(C), and thus, the district court did not abuse its discretion in admitting the testimony of Agent Mullin.

Finally, Bermudez and Ortiz assert that the evidence that was presented was insufficient to sustain their convictions. We must affirm the conviction, unless under no reasonable construction of the evidence, could the jury have found the defendant guilty beyond a reasonable doubt. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). Moreover, we must view the evidence in the light most favorable to the government. United States v. Edouard, 485 F.3d 1324, 1349 (11th Cir. 2007). We find the evidence, while not overwhelming, sufficient to support the convictions in this case. While it is true that the only type of evidence presented was witness identifications, the government presented three separate witness statements identifying Ortiz as the operator of the boat and two statements identifying Bermudez. Even though the witnesses recanted these identifications at trial, the jury was entitled to assess their credibility and determine which of their statements was true. When the evidence is viewed in the light most favorable to the government, the jury reasonably could have concluded that Bermudez and

7

Ortiz knowingly operated the boat that brought the Cubans to the United States and that they conspired to do so together.

### 3. Sentence of Yenier Broche Ortiz

Finally, Ortiz challenges the district court's application of a sentencing enhancement for recklessly creating a substantial risk of bodily injury or death by operating a boat with many persons over capacity and without sufficient life jackets for the passengers. The sentencing guidelines provide that if intentional or reckless behavior that created a risk of serious bodily injury or death to another person occurred during the course of committing the offense of transporting unlawful aliens, the defendant's sentence is to be increased by two levels, or to level 18, whichever is higher. U.S.S.G. § 2L1.1(b)(6). This increase is intended to apply to a "wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition)." U.S.S.G. § 2L1.1, comment. (n.5). The district court did not clearly err in finding that Ortiz was reckless when transporting the Cuban aliens to the United States. Ortiz was identified as the driver of the overloaded boat that transported the Cubans across the open seas from Cuba to Loggerhead Key. The evidence established that there were about forty

8

people on this boat that was designed to hold only nine to twelve individuals.  The boat was found with only twenty-one life jackets on board.  See United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004).  The enhancement here was not erroneous.

For the reasons discussed above, the convictions and sentences are

**AFFIRMED**.