[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Sept. 10, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-17209
Non-Argument Calendar

_____

D. C. Docket No. 08-00084-CR-3-LAC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAMANA RAO SURANENI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 10, 2009)

Before DUBINA, Chief Judge, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Appellant Ramana Rao Suraneni appeals his 24-month sentence, imposed

following his guilty plea to conspiracy to commit visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 371; conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), (B)(i) and (h); and visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2. On appeal, Suraneni raises three challenges to his sentence.

Suraneni first argues that the district court committed reversible error by improperly relying on U.S.S.G. § 2L2.1 in calculating his base offense level under U.S.S.G. § 2S1.1(a)(1), the guidelines provision applicable to money-laundering offenses. Suraneni contends that the money-laundering charge was based on the earnings that he derived from working in violation of his own immigration status and, thus, the district court should not have relied on § 2L2.1, which relates to offenses involving trafficking or assisting others in the fraudulent acquisition of immigration credentials.

With respect to guidelines issues, we review "purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with 'due deference.'" *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1136-37 (11th Cir. 2004). When reviewing a district court's application of a guidelines provision to the facts, we have held that "due deference" is tantamount to clear-error review. *See United*

2

*States v. White*, 335 F.3d 1314, 1318-19 (11th Cir. 2003). For a finding to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." *Rodriguez-Lopez*, 363 F.3d at 1137 (internal quotation marks omitted).

Under the Sentencing Guidelines, a court determining the appropriate offense level must employ a two-step process. *United States v. Saavedra*, 148 F.3d 1311, 1314 (11th Cir. 1998). The court must first determine the applicable guidelines section based on "the offense of conviction." *Id.*; U.S.S.G. § 1B1.2(a). The offense of conviction denotes "the offense conduct charged in the count of the indictment . . . of which the defendant was convicted." U.S.S.G. § 1B1.2(a). Once the correct guidelines provision has been identified, the sentencing court must then select the appropriate base offense level from among those specified within that guideline. *Saavedra*, 148 F.3d at 1314-15; U.S.S.G. §§ 1B1.2(b), 1B1.3. Only then may a court consider relevant conduct which did not comprise an element of the offense of conviction. *Saavedra*, 148 F.3d at 1314, 1316-17.

Where multiple counts of conviction have been adjudged, the district court must group together all counts involving substantially the same harm. U.S.S.G. § 3D1.2(b). The applicable offense level for groups of closely related counts is the "highest offense level of the counts in the Group." U.S.S.G. § 3D1.3(a).

Ordinarily, the court must calculate the offense level for each constituent count to ensure that the appropriate offense level has been identified. *United States v. Kuku*, 129 F.3d 1435, 1438 (11th Cir. 1997); U.S.S.G. § 3D1.3, comment. (n.2).

Suraneni first alleges that the district court committed reversible error by using U.S.S.G. § 2L2.1 to establish Suraneni's base offense level at 11. Suraneni argues that the district court should have used U.S.S.G. § 2L2.2 for a base offense level of 8. We conclude from the record that the district court properly utilized U.S.S.G. § 2L2.1 because the evidence established that Suraneni not only laundered the proceeds of his own visa fraud through Data Group's bank accounts, but also laundered the proceeds of Maduhsudhan Koduru's visa fraud through Suraneni's company Sumach Business Solutions.

The guidelines contain a provision for "Money Laundering and Monetary Transaction Reporting." This provision states:

(a)    Base Offense Level:

(1)  The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense . . .; and (B) the offense level for that offense can be determined; or

(2) **8** plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

U.S.S.G. § 2S1.1(a) (emphasis added).

Suraneni argues that the district court should have used U.S.S.G. § 2L2.2 because the $132,500 laundered by Suraneni with Data Group represented proceeds of his personal visa fraud. However, the uncontroverted evidence established that Suraneni not only laundered the proceeds of his personal visa fraud, but also laundered the funds of visa fraud committed by another person by running payrolls for Madhusudhan Koduru, pursuant to § 2L2.1. (R160-38-39).

Application note 2 of the commentary to U.S.S.G. § 2S1.1 provides guidance for the application of subsection (a)(1). Relevant for the purposes of this case is application note 2(A) which states,

> Multiple Underlying Offenses.- In cases in which subsection (a)(1) applies and there is more than one underlying offense, the offense level for the underlying offense is to be determined under the procedures set forth in Application Note 3 of the Commentary to § 1B1.5 (Interpretation of References to Other Offense Guidelines).

U.S.S.G. § 2S1.1, comment. (n.2(A)).

Application note 3 of the U.S.S.G. § 1B1.5 provides in relevant part,

> A reference may direct that, if the conduct involved another offense, the offense guideline for such other offense is to be applied . . . . Where there is more than one such other offense, the most serious such offense (. . .) is to be used.

U.S.S.G. § 1B1.5, comment. (n.3).

The evidence in this case demonstrates that Suraneni engaged in a conspiracy to launder funds for his own visa fraud and the visa fraud of another, that is,

5

Madhusudhan Koduru; therefore, we conclude that the district court properly used the higher offense level of 11 found in U.S.S.G. § 2L2.1, which was the offense level for the "most serious such offense."

Suraneni next argues on appeal that the district court erred in applying a two-level sentencing increase under § 2S1.1(b)(3) for sophisticated laundering because the evidence did not support the district court's finding that his money-laundering scheme was committed in a sophisticated manner.

Section 2S1.1(b)(3) of the Guidelines provides a two-level increase if an offense involved "sophisticated laundering." U.S.S.G. § 2S1.1(b)(3). The guidelines commentary explains that sophisticated laundering "means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense," and it typically involves the use of "fictitious entities," "shell corporations," "two or more levels (i.e. layering) of transactions," or "offshore financial accounts." U.S.S.G. § 2S1.1, comment. (n.5(A)).

Since Suraneni's money-laundering scheme involved two or more layers of transactions and the use of a shell corporation to conceal the source of his illicitly derived funds, we conclude Suraneni's conduct was committed in a sophisticated manner and, therefore, the district court properly applied the enhancement.

Finally, Suraneni argues on appeal that the district court erred in applying a

two-level role enhancement under U.S.S.G. § 3B1.1(c) for being an organizer of criminal activity.

The district court initially imposed a four-level § 3B1.1(a) enhancement for being an organizer of criminal activity involving five or more participants. At Suraneni's resentencing hearing, the role enhancement was subsequently reduced to two levels because the district court feared that the application of § 2L2.1(b)(2)(A), under the auspices of § 2S1.1(a)(1), would result in impermissible double counting. As such, the district court applied the two-level § 3B1.1(c) enhancement, though it did not explicitly determine whether Suraneni's role in the offense was more akin to an organizer or a mere supervisor of criminal conduct.

Suraneni claims the district court's finding that he was an organizer, leader, manager, or supervisor, pursuant to U.S.S.G. § 3B1.1(c), was improper. In support of his argument, Suraneni describes his conduct as merely referring others and assisting some with clerical tasks. The record demonstrates that Suraneni's conduct was much more. The evidence demonstrated that Suraneni exercised decision making authority, recruited accomplices, and claimed a right to a larger share of the fruits of the crime. Therefore, we conclude that the district court properly applied U.S.S.G. § 3B1.1(c) .

7

For the above-stated reasons, we affirm Suraneni's sentence.

**AFFIRMED.**