[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10749
Non-Argument Calendar
_____

D.C. Docket No. 8:15-cr-00453-MSS-MAP-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

TROY MARKEITH GRIFFIN,
a.k.a. OGC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 16, 2018)

Before WILSON, JORDAN and HULL, Circuit Judges.

PER CURIAM:

Troy Markeith Griffin appeals his convictions and total 294-month sentence for conspiracy to commit Hobbs Act robbery, Hobbs Act robbery, and brandishing a firearm in furtherance of a crime of violence.  On appeal, Griffin argues that (1) the evidence presented at trial was insufficient to establish the jurisdictional element for the two Hobbs Act robbery offenses, and (2) the district court erred in applying a two-level sentencing enhancement for obstruction of justice.  After careful review, we affirm.

## I.  BACKGROUND

### A.    Offense Conduct and Indictment

On October 8, 2015, Griffin and four accomplices robbed the Twin Horse Saloon in St. Petersburg, Florida.  Griffin, who planned and orchestrated the robbery, waited outside in the getaway car while the other four men, two of whom were armed, went into the bar.  Once inside, Griffin's codefendants stole $475.50 in cash from the Twin Horse's register and an additional $220 from a Twin Horse employee and one of the bar's patrons.  During the course of the robbery, Griffin's codefendants brandished their firearms, struck one patron on the back of the head with a cue ball, punched and kicked a female patron in the face, and hit two patrons with a pool cue.  After the robbery, Griffin's codefendants returned to the car just as the police were arriving.  Griffin led the police on a high speed chase

before they ultimately disabled Griffin's vehicle and apprehended all five defendants.

On November 4, 2015, a federal grand jury indicted Griffin and the four codefendants on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1), one count of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2 (Count 2), and one count of brandishing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count 3).  All four of Griffin's codefendants pled guilty, but Griffin proceeded to trial.

## B.    Relevant Trial Evidence

### 1.    Hobbs Act Jurisdictional Element

To establish the jurisdictional element for the Hobbs Act robbery charges— that the offense affected interstate commerce—the government presented the testimony of David Brooks, the director of purchasing for J.J. Taylor Companies, a beer distributor, and of Albert Velocci, the owner of the Twin Horse Saloon. Brooks testified that J.J. Taylor was a large beer distributor in the state of Florida, headquartered in Jupiter, Florida, with several warehouses located throughout the state and a distribution center in Minneapolis, Minnesota.  During Brooks's testimony, the government entered three invoices—dated May 8, 2015, December 26, 2014, and October 24, 2014, respectively—showing beer purchases made by

3

the Twin Horse through J.J. Taylor. The invoices showed purchases of Coors Light, Heineken, Miller Lite, and Miller High Life. Brooks testified that the Coors Light and Miller Lite sold by J.J. Taylor came from a brewery in Albany, Georgia, and the Heineken sold by J.J. Taylor was imported from Holland. Brooks further stated that, to his knowledge, the Twin Horse continued to order beer through J.J. Taylor after October 2015.

Velocci testified that he had consistently ordered beer for the Twin Horse from J.J. Taylor for approximately the last 11 years and primarily ordered Miller, Miller Lite, Coors, Corona, and other similar products distributed by J.J. Taylor. Velocci stated that, until recently, he ordered beer from J.J. Taylor once a week, but J.J. Taylor had now moved to a delivery schedule of once every three weeks. Velocci confirmed that, because he ordered from J.J. Taylor on a regular basis, the Twin Horse was always stocked with beer from J.J. Taylor. Velocci also testified that he had to close the Twin Horse on the night of the robbery, but reopened the next day, and that the money Griffin and his codefendants stole would have been used in furtherance of his business.

2.    Obstruction of Justice Testimony

The government also presented the testimony of Juwaan Roberts, one of Griffin's codefendants. Roberts testified that he pled guilty to armed robbery pursuant to a written plea agreement with the government, in which he had agreed

4

to cooperate with the government, including by testifying in Griffin's case. Roberts stated that he hoped to receive a reduced sentence in return for his cooperation, but that the government had not made him any promises about what sentence he would receive.

Among other things, Roberts testified that while he was in jail prior to trial, he had written a false affidavit retracting the information he had provided to the government about Griffin and sent it to Griffin's lawyer. Roberts stated that no one forced him to write the affidavit, that he wrote it of his own free will, and that Griffin himself did not tell Roberts to write the affidavit. Roberts explained, however, that he wrote the affidavit because a person who he believed was acting on Griffin's behalf approached him, instructed Roberts to write the affidavit, and told Roberts to send it to Griffin's lawyer's address, which the person provided. Roberts stated that he wrote the affidavit because he was "under a lot of pressure and people just coming to me telling me I shouldn't do what I was doing"—i.e., testifying against Griffin—because of "how bad it could be on [him] and [his] family." Roberts took that to mean that he "could be like beat up in prison or some things could happen to [his] family," which worried him.

## C.    Motion for Judgment of Acquittal and Verdict

After the government rested its case, Griffin moved for a judgment of acquittal. In relevant part, Griffin argued that the government had not proven a

5

sufficient nexus to interstate commerce because the invoices presented during Brooks's testimony were remote in time from the date of the robbery, and the bar was able to reopen the next day.

The district court denied Griffin's motion, determining that the interstate nexus was adequately satisfied by the evidence presented. The district court noted that "testimony is evidence," and that the government did not have to present a document or receipt closer to the time of the robbery to prove that the Twin Horse had purchased items that traveled in interstate commerce. The district court further noted that Velocci testified that the Twin Horse routinely purchased beer from J.J. Taylor, which operated in interstate commerce because it purchased beer from out-of-state suppliers, and determined that this evidence was sufficient to satisfy the interstate nexus requirement.

Griffin did not present any witnesses in his defense, and rested after entering a single exhibit. The jury found Griffin guilty of all three charges in the indictment. Griffin did not renew his motion for a judgment of acquittal after the close of all of the evidence or after the jury returned its verdict.

## D.    Sentencing

In calculating Griffin's advisory guidelines range for Counts 1 and 2 (the Hobbs Act robbery offenses),[1] the presentence report ("PSR") applied, among other things, a two-level increase under U.S.S.G. § 3C1.1 based on Griffin's attempt to obstruct justice by sending someone to intimidate Roberts into writing the false affidavit exculpating Griffin.  Including this two-level increase, Griffin had a total offense level of 30 and a criminal history category of VI, resulting in an advisory guidelines range of 168 to 210 months' imprisonment.

At the sentencing hearing, Griffin objected to the obstruction of justice increase.  Griffin argued that Roberts had testified that he was not coerced in any way into writing the affidavit and provided no details about the individual who supposedly approached him in jail about writing the affidavit.  Griffin further contended that nothing in the record indicated that Griffin had instructed this individual to intimidate Roberts.

The district court ultimately concluded that the obstruction of justice increase was appropriate.  The district court found that:

> [I]t is more likely than not that [Griffin] was the source of the procurement of this affidavit and that in securing someone to act as his ombudsman to get this affidavit, he did place the co-defendant, Juwaan Roberts, in a position of fear and concern for his family, which is by extension fear for himself . . . .

[1]Count 3, the § 924(c) offense, carried a statutory mandatory minimum sentence of seven years, to run consecutive to any other sentence.

7

After taking a brief recess to review Roberts's testimony, the district court further stated:

> [Roberts] was cross-examined and indicated, by reading of the letter, that he was saying in the letter that he was making the statements of his own free will, but on direct and redirect he testified that he felt in fear of his safety in prison, the safety of his family members, and on redirect testified that he believed that the letter was procured by someone acting on Mr. Griffin's behalf and for Mr. Griffin's benefit, and that he was directed to send the letter by this person to Mr. Griffin's attorney.  So the Court stands by its initial ruling with respect to the obstruction offense or enhancement.

The district court adopted the PSR's guidelines calculations, and after considering those calculations, the parties' arguments, and the 18 U.S.C. § 3553(a) factors, sentenced Griffin to a total term of 294 months' imprisonment.  This sentence consisted of concurrent 210-month terms as to Counts 1 and 2, and a consecutive 84-month term as to Count 3.  Griffin now appeals.

## II.  DISCUSSION

**A.    Hobbs Act Robbery Convictions**

Typically, we review de novo the sufficiency of the evidence and the denial of a motion for judgment of acquittal.  See United States v. Gray, 260 F.3d 1267, 1271 (11th Cir. 2001).  Where, as here, the defendant fails to renew his motion for judgment of acquittal at the close of all of the evidence, however, "we review the defendant's challenge to the sufficiency of the evidence for a manifest miscarriage of justice."  United States v. House, 684 F.3d 1173, 1196 (11th Cir. 2012).  Under

8

this standard, we must "affirm the defendant's conviction unless the evidence on a key element of the offense is so tenuous that [the] conviction [is] shocking." Id. (internal quotation marks omitted).

The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or conspires so to do, . . . shall be fined under this title or imprisoned not more than twenty years, or both." 18 U.S.C. § 1951(a). "Commerce" is defined broadly under the statute, see id. § 1951(b)(3), and the government need only prove a "minimal effect on commerce" to establish the interstate commerce element of the offense. Gray, 260 F.3d at 1272. "A mere depletion of assets of a business engaged in interstate commerce will meet the requirement." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000) (internal quotation marks omitted).

On appeal, Griffin primarily argues that the government's evidence was insufficient because the three invoices from J.J. Taylor entered into evidence predated the robbery by five months or more, and are therefore too remote in time to establish that the Twin Horse was engaged in interstate commerce at the time of the robbery. Griffin further asserts that "there was no testimony that the Twin Horse Saloon was itself engaged in interstate commerce or had continued to order beers that were brewed outside Florida."

9

Griffin's arguments lack merit and are belied by the record. As described above, both Brooks and Velocci testified that the Twin Horse continued to order beer from J.J. Taylor up to and after the time of the robbery. Additionally, Velocci testified that the Twin Horse was stocked with beer from J.J. Taylor "all the time" because he consistently ordered beer for the bar from J.J. Taylor. As the invoices demonstrated, and Velocci's testimony confirmed, the Twin Horse regularly ordered, among other products, Miller Lite, Coors Light, and Heineken, all of which were brewed outside the state of Florida and therefore traveled in interstate commerce to reach J.J. Taylor and ultimately the Twin Horse. This evidence sufficiently established that the Twin Horse was engaged in interstate commerce at the time of the robbery through its purchase of out-of-state beer from J.J. Taylor for resale to its customers. See, e.g., United States v. Paredes, 139 F.3d 840, 844-45 (11th Cir. 1998) (finding sufficient interstate nexus where defendants robbed two local convenience stores that sold "some" items manufactured out of state), superseded on other grounds as recognized in United States v. Brown, 332 F.3d 1341 (11th Cir. 2003).

Finally, Velocci testified that he had to close the Twin Horse on the night of the robbery and that he would have used the money Griffin and his codefendants stole in furtherance of his business. Based on this depletion of assets, a reasonable jury could infer that Twin Horse had less money to spend in interstate commerce

10

as a result of the robbery, thereby establishing a minimal effect on interstate commerce.  See Gray, 260 F.3d at 1276 (holding that evidence of money stolen from a cash register and disruption in normal business hours caused by robbery were sufficient to prove a minimal effect on interstate commerce); Rodriguez, 218 F.3d at 1244.  In sum, the evidence presented at trial sufficiently established that the Twin Horse robbery had at least a minimal effect on interstate commerce and was by no means "so tenuous" as to render the conviction "shocking."  See House, 684 F.3d at 1196; Gray, 260 F.3d at 1272.

## B.     Obstruction of Justice Increase

In reviewing the district court's imposition of a sentencing increase, we review the district court's factual findings for clear error and its application of the guidelines to the facts de novo.  United States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011).  A factual finding is clearly erroneous if we are left with a "definite and firm conviction that a mistake has been committed."  United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (internal quotation marks omitted).  The government bears the burden of proving the applicability of a sentencing enhancement by a preponderance of the evidence.  United States v. Little, 864 F.3d 1283, 1290 (11th Cir. 2017).

The Sentencing Guidelines provide for a two-level increase in a defendant's offense level if:

(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense.

U.S.S.G. § 3C1.1.  Among other things, the § 3C1.1 increase applies to "threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so" and "committing, suborning, or attempting to suborn perjury."  U.S.S.G. § 3C1.1, cmt. n.4(A) & (B).

Here, the district court did not err in applying the § 3C1.1 increase based on Roberts's testimony that he wrote a false affidavit exculpating Griffin at the direction of a man who he believed was acting on Griffin's behalf because he feared for the safety of himself and his family.  See U.S.S.G. § 3C1.1 & cmt. n.4 (A) & (B).  On appeal, Griffin argues that the district court's factual finding that Griffin was responsible for indirectly inducing Roberts to write the false affidavit was mere speculation.  Although the government presented no direct evidence that Griffin was responsible, it was reasonable for the district court to infer that he was based on (1) Roberts's testimony that he believed the unnamed man knew Griffin and was acting on Griffin's behalf, (2) the fact that the affidavit specifically exculpated Griffin and not any other codefendant, and (3) Roberts's testimony that he was told to send the affidavit to Griffin's trial counsel at the address the unnamed man provided.  Accordingly, the district court did not clearly err in

12

finding that it was more likely than not that Griffin was responsible, and therefore did not err in concluding that Griffin had indirectly attempted to obstruct justice. See Little, 864 F.3d at 1290; Doe, 661 F.3d at 565; Rodriguez-Lopez, 363 F.3d at 1137.

## III. CONCLUSION

For the foregoing reasons, this Court affirms Griffin's convictions and total 294-month sentence.

**AFFIRMED.**[2]

---

[2]Griffin's motion for leave to file a reply brief out of time is GRANTED.