[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 23-11325

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MICHAEL ALLEN ROBINSON,

Defendant- Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cr-20063-BB-1

————————————————

Before WILSON, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Defendant-Appellant Michael Robinson, who is presently incarcerated, appeals his 75-month sentence for possession of a firearm as a convicted felon.

## I.

On March 1, 2021, Robinson arrived at a corner store in Miami, Florida. He exited the passenger side of a white Chevy Malibu, and the driver remained in the parking lot. While in the store, Robinson removed a gun from his waistband and placed it back into his pants. A store clerk recognized Robinson—claiming he had come to the store two weeks prior and "bragged" about being involved in a local shooting. After approximately thirty minutes, Robinson exited the store. The store's video surveillance showed him loitering outside before being approached by an unidentified man. Their discussion quickly escalated, and a struggle between the two men ensued. The video showed Robinson reaching toward his waistband and producing a firearm. Robinson then reached toward the man's waistband and grabbed another firearm. The unidentified man began to run away as Robinson fired several shots in his direction. The store clerk who had recognized Robinson earlier began firing shots at Robinson from the store's doorway, and Robinson shot back. Robinson then returned to the Chevy and was driven away.

Law enforcement responded to the scene and recovered store surveillance footage, which provided clear views of the encounter, Robinson's face, and the Chevy's plate number. The next day, the same officer observed a white Chevy Malibu with the identified plate. After the Chevy ran a red light, the officer initiated a traffic stop, and upon approaching the vehicle, recognized Robinson from the store's surveillance footage in the passenger seat. A records check confirmed Robinson's identity and his status as a convicted felon. Robinson was taken into custody.

On September 1, 2022, Robinson was charged with two counts of being a felon in knowing possession of a firearm. 18 U.S.C. § 922(g)(1). He pled guilty in exchange for the government dismissing the second count.

Robinson's probation officer prepared a Presentence Investigation Report (PSI). The PSI calculated Robinson's base offense level as 27 under U.S.S.G. § 2A2.1(a)(2) because the offense involved attempted murder, and because the cross-reference provision pursuant § 2K2.1(c)(1)(A) directs application of § 2X1.1 if the defendant possessed a firearm in connection with another offense and the resulting offense level is higher. After reducing three levels for Robinson's acceptance of responsibility under § 3E1.1, Robinson's total offense level was 24. The PSI also reported criminal history, which included two armed robberies and a prior conviction for possessing a firearm as a felon. Robinson had six criminal history points, establishing a criminal history category of III. The PSI determined, based on his total offense level of 24 and criminal history category

of III, that Robinson had an advisory sentencing guidelines range of 63 to 78 months of imprisonment.

At the sentencing hearing, Robinson objected to the PSI on the grounds that his possession of a firearm was not in connection with an attempted murder because he had no ability to retreat and was thus acting in self-defense under Florida law and federal law. Robinson also moved for a downward variance, arguing that his history of substance abuse, poor mental health, acceptance of responsibility, and firing in self-defense justified a variance from the Guidelines.

Over Robinson's objections, the district court sentenced him to 75 months' imprisonment, followed by three years of supervised release. Robinson timely appealed. On appeal, he argues that: (1) the district court erred in applying the base offense level for attempted murder pursuant to the Sentencing Guidelines' cross-reference provisions because he was acting in self-defense and, thus, his felon in possession offense was not connected to an attempted murder; and (2) even if the cross-reference provisions properly apply, the district court's sentence was substantively unreasonable.

II.

We review the district court's fact findings for clear error and its application of the Sentencing Guidelines to particular facts de novo. *United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006). For a factual error to be clear, we, "after reviewing all the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134,

1137 (11th Cir. 2004) (quotations omitted). We defer to a credibility determination by a factfinder "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotations omitted). At the district court level, the government has the burden of establishing a sentencing enhancement by a preponderance of reliable evidence. *United States v. Askew*, 193 F.3d 1181, 1183 (11th Cir. 1999).

Under the Sentencing Guidelines, a defendant convicted of unlawful possession of a firearm under 18 U.S.C. § 922(g) has their offense level calculated under U.S.S.G. § 2K2.1. U.S.S.G. § 2K2.1. A base offense level of 20 is assigned if they have one prior felony conviction for a crime of violence or a serious drug offense. *Id.* § 2K2.1(a)(4). Typically, four levels are added if the defendant possessed the firearm in connection with another felony offense. *Id.* § 2K2.1(b)(6). However, a separate cross-reference provision, § 2X1.1, is used if the defendant possessed the gun in connection with another felony offense and the use of the cross-reference provision results in a higher offense level. *Id.* § 2K2.1(c)(1)(A). The cross-reference provision directs that, whenever an attempt is separately covered in a Guidelines provision, that provision should be applied. *Id.* § 2X1.1(c)(1). Attempted murder is covered by § 2A2.1. *Id.* § 2A2.1. The base offense level thereunder is 27 unless the completed offense would have been first degree murder. *Id.* § 2A2.1(a)(1)–(2).

In Florida, "attempted second-degree murder has two elements: (1) the defendant intentionally committed an act that could have resulted, but did not result, in the death of someone, and (2) the act was imminently dangerous to another and demonstrated a depraved mind without regard for human life." *Coicou v. State*, 39 So. 3d 237, 241 (Fla. 2010) (quotations omitted). However, an individual may "use deadly force if he or she reasonably believes that using or threatening to use such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." Fla. Stat. § 776.012(2). Such an individual has a duty to retreat if they are engaged in criminal activity. *See id.* The defendant's escalation of an incident forecloses self-defense and permits application of the cross-reference. *United States v. Moore*, 76 F.4th 1355, 1375–76 (11th Cir 2023) (discussing self-defense under a similar section of Alabama law, Ala. Code § 13A-3-23).

This court has held that a federal justification defense exists as to 18 U.S.C. § 922(g)(1) if the defendant: (1) was under "imminent . . . threat of death"; (2) did not recklessly place themselves in that situation; (3) had no reasonable alternative to possessing a gun; and (4) "there was a direct causal relationship between the criminal action and the avoidance of the threatened harm." *United States v. Rice*, 214 F.3d 1295, 1297 (11th Cir. 2000).

As a preliminary matter, the district court correctly applied the cross-reference provision under § 2K2.1(c)(1)(A). That provision is applicable if the government shows by a preponderance of

the evidence that Robinson's possession of a firearm was in connection with another offense and if calculating his offense levels under the cross-reference results in a higher offense level. U.S.S.G. § 2K2.1(c)(1)(A); *Askew*, 193 F.3d at 1183.

The district court did not err in finding that Robinson possessed the firearm in connection with an attempted murder. The store's video evidence showed that Robinson was the only one who drew a gun during the altercation, that he then seized a gun from the unidentified man, and that he fired three shots at the man as the man fled. It was not "contrary to the laws of nature" to disbelieve Robinson's testimony at his sentencing hearing to the extent it contradicted the video evidence. *Ramirez-Chilel*, 289 F.3d at 749 (quotations omitted).

Based on these facts, the district court did not err in determining that Robinson intentionally committed an act which could have resulted in death, was imminently dangerous to another, and that demonstrated a lack of regard for human life, such that his actions could constitute attempted murder under Florida law. *Coicou*, 39 So. 3d at 241.

Neither did the district court err in determining that Robinson's actions were not covered by Florida's self-defense law or federal law's justification defense. Robinson was not under a sufficiently imminent threat of death, rendering his belief in such a threat unreasonable. *See* Fla. Stat. § 776.012(2); *Rice*, 214 F.3d at 1297. Robinson was the only one during the confrontation to draw a gun, showing that he escalated the confrontation to the level of

deadly force. *Rice*, 214 F.3d at 1297; *Moore*, 76 F.4th at 1375–76. And even if the man's flight was tactical repositioning to attack Robinson, the repositioning afforded Robinson a chance to safely retreat.

## III.

This court reviews the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard in light of the 18 U.S.C. § 3353(a) factors. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Trailer*, 827 F.3d 933, 936 (11th Cir. 2016) (per curiam). This court will vacate a sentence "if, but only if, [it is] left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*) (quotation omitted). This court may not "set aside a sentence merely because [it] would have decided that another one is more appropriate" because the district court's sentence need only be "a reasonable one." *Id.* at 1191.

The party challenging the sentence bears the burden of showing it to be unreasonable in light of the record and the § 3553(a) factors. *United States v. Langston*, 590 F.3d 1226, 1236 (11th Cir. 2009). In imposing a criminal sentence, the court should consider factors including: the nature and circumstances of the offense; the history and characteristics of the defendant; the need to reflect the offense's seriousness, promote respect for the law, provide just punishment, adequately deter criminal conduct, and protect the public; and the Guidelines sentencing range. 18 U.S.C.

§ 3553(a). District courts are required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *Id.* They need not give all the factors equal weight and have discretion to attach great weight to one factor over another. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). This discretion is particularly pronounced when weighing criminal history. *United States v. Riley*, 995 F.3d 1272, 1279 (11th Cir. 2021).

This court "ordinarily expect[s] a sentence within the Guidelines range to be reasonable." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam). The Guidelines range for a defendant with 24 offense levels and a criminal history category of III is 63 to 78 months' imprisonment, U.S.S.G. chap. 5, pt. A, and the maximum sentence for violation of 18 U.S.C. § 922(g) is 15 years. 18 U.S.C. § 924(a)(8).

Here, Robinson's 75-month sentence is not substantively unreasonable. First, it is within the Guidelines range and falls under the statutory maximum. U.S.S.G. chap. 5, pt. A; *Gonzalez*, 550 F.3d at 1324; 18 U.S.C. § 924(a)(8). Second, Robinson's offense was quite serious and implicated the need to protect the public, as it involved shooting at a retreating opponent who had not even drawn a gun. 18 U.S.C. § 3553(a)(2)(A), (C). Third, Robinson's criminal history includes a crime of violence and shows rapid rearmament despite Robinson knowing he was not permitted to possess firearms, which the district court was entitled to give substantial weight in

evaluating the need to protect the public and deter Robinson. *Riley*, 995 F.3d at 1279; 18 U.S.C. § 3553(a)(2)(B)–(C).

## IV.

For the foregoing reasons, this court affirms the district court's sentence.

**AFFIRMED.**