**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Elvira CORDERO, Defendant–Appellant.**

**No. 87–6087.
Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 28, 1988.

Gary Kollin, Miami, Fla., (court-appointed), for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Linda C. Hertz, Allan J. Sullivan, Asst. U.S. Attys., Miami Fla., for plaintiff-appellant.

Before KRAVITCH, HATCHETT and CLARK, Circuit Judges.

KRAVITCH, Circuit Judge:

Elvira Cordero was convicted by a jury of possession with intent to distribute a quantity of cocaine in excess of 500 grams and of conspiracy to possess and distribute the same in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846. The trial court sentenced Cordero to serve concurrent mandatory five-year terms on the substantive count and the conspiracy count and to a subsequent four-year term of supervised release, all pursuant to the enhanced penalty provisions of 21 U.S.C. § 841(b).[1] The

---

1. Section 841(b)(1) provides, in part, that:
   (B) In the case of a violation of subsection (a) of this section involving—

   .    .    .    .    .

   (ii) 500 grams or more of a mixture or substance containing a detectable amount of—

   .    .    .    .    .

   (II) cocaine, its salts, optical and geometric isomers, and salts of isomers;

sole issue presented on appeal is whether the evidence adduced at trial was sufficient as a matter of law to prove beyond a reasonable doubt that the amount of cocaine involved was 500 grams or more and, thus, sufficient to trigger the penalty enhancement provisions of section 841(b).[2] Concluding that the evidence adduced was sufficient to prove beyond a reasonable doubt that the amount of cocaine involved was in excess of 500 grams, we affirm.[3]

## I.

The following facts are undisputed:

On May 27, 1987 a confidential informant (CI) working with the Drug Enforcement Administration (DEA) spoke with Cordero via telephone and arranged to meet her later that day at the Miami, Florida residence of one Enrique Navarro. There, Cordero and Navarro were to sell to the CI and the CI's companion, Special Agent Moratta of the DEA, five kilograms of cocaine.

Approximately fifteen minutes after the CI and Agent Moratta arrived at the Navarro residence, Cordero arrived. Upon her arrival, Cordero removed a large pink shoulder bag from the trunk of the car she was driving. Once inside Navarro's apartment, Cordero removed from the shoulder bag a yellow, duct-taped package which she handed to Agent Moratta.

Agent Moratta cut a small triangular "window" in the package and removed a sample which he wrapped in paper for subsequent delivery to the DEA laboratory for testing. Feigning the need to obtain the money to buy the package from which he had removed the sample, Agent Moratta handed back the package and left the apartment. Cordero and the CI followed him out. Once on the porch, Agent Moratta gave a pre-arranged arrest signal to other DEA agents waiting outside the apartment.

Navarro, who had waited outside while Cordero, the CI, and Agent Moratta were inside examining the package, was arrested immediately. Cordero fled into the apartment. Within moments DEA Agents Perez and Ramsey gained entry into the apartment, where Cordero was arrested as she was exiting the bathroom. Agent Ramsey found an empty yellow package in a wastepaper basket in the bathroom.

## II.

At trial, the government's theory was that the empty package Agent Ramsey found in Navarro's bathroom wastepaper basket was the same package Cordero had removed from her shoulder bag and handed to Agent Moratta. That is, it was the package into which Agent Moratta had cut a "window" and from which he had removed a sample that the DEA lab subsequently identified as cocaine. The government contended that the package contained a quantity of cocaine in excess of 500 grams when Cordero handed it to Agent Moratta but that Cordero had flushed the contents of the package down the toilet when she fled into the apartment upon Navarro's arrest.

The jury apparently believed the government's theory of the case; it returned a verdict of guilty both on the substantive count and on the conspiracy count, finding specially that the amount of cocaine involved with respect to each count was over

such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years .... No person sentenced under this subparagraph shall be eligible for parole during the term of imprisonment imposed herein.
21 U.S.C.A. § 841(b)(1)(B)(ii)(II) (West Supp. 1988).

**2.** When less than 500 grams of cocaine is involved and when, as here, no death or serious bodily injury results from the violation of § 841(a), there is no mandatory minimum term of imprisonment, no foreclosure of parole, and the maximum term of imprisonment is twenty —rather than forty—years. *See* 21 U.S.C. § 841(b)(1)(C).

**3.** Our holding makes it unnecessary to decide the merits of the government's contention that the sentencing scheme of 21 U.S.C. § 841(b) places no burden on the prosecution to prove at trial the amount of cocaine involved beyond a reasonable doubt.

500 grams.[4] Cordero admits that, at the time of her arrest, "she had destroyed a quantity of cocaine by flushing it down a toilet." Her sole claim is that the evidence was insufficient as a matter of law to support the jury's finding that the quantity of cocaine she possessed was in excess of 500 grams.

### A.

At trial, the government produced three types of evidence as to the quantity of cocaine involved in this transaction:

First, the government elicited the testimony of Agent Moratta, who estimated the weight of the package handed to him by Cordero: the package from which he took a sample. He based his estimate upon his own observation of the package as it compared with others he had observed during his tenure with DEA. Agent Moratta estimated the weight of the package to be approximately one kilogram.

Second, the government elicited the testimony of a DEA chemist, Ms. Roman, who examined the package that Agent Ramsey found in the wastepaper basket in the bathroom of the Navarro apartment. Ms. Roman testified that it was a kilogram-size package, that it contained cocaine residue and that, if full, it certainly would contain more than 500 grams of cocaine.

Third, the government introduced the testimony of three agents who testified to Cordero's post-arrest statements regarding her flushing of cocaine down the toilet in the Navarro apartment. Agent Perez, who accompanied Cordero to the DEA district offices after her arrest, testified on direct examination that Cordero had stated in the car on the way to the district office "that she thought the police were stupid because they didn't have any evidence on her because she had flushed the kilogram of cocaine down the toilet ...." However, when asked on cross examination whether Cordero had "specified an amount" of cocaine in her statement, Agent Perez admit-

ted that Cordero had not. Agent Thompson, who also accompanied Cordero to the DEA district office, testified that "on our ride back to the office, [Cordero] started making statements such as cops are dumb or stupid, I flushed the dope. You don't have any evidence on me. What are you going to do, there is no evidence." Agent Andrejko testified that, while in the DEA district offices after her arrest, Cordero "said to [him] its too bad that you didn't get the other 5 kilos, and when she said that, she had a smirk on her face."

### B.

Cordero argues that the government's evidence was insufficient in two respects:

First, she contends that the evidence was insufficient to establish that the yellow package recovered from the bathroom wastepaper basket was the same package Cordero removed from her shoulder bag and handed to Agent Moratta; thus, the jury's acceptance of the veracity of the testimony of Ms. Roman as to the amount of cocaine contained in the package required the jury impermissibly to draw inference upon inference. The jury first would have to infer from the failure of the DEA to find any other package in the Navarro apartment that the one found was the one that Cordero had handed to Agent Moratta. Then, according to Cordero, the jury would have to infer that the package in question contained only cocaine and that it did not contain empty voids or sections that were simply uncontrolled filler substances or dextrose.

Second, Cordero argues that the testimony of Agent Moratta as to his estimate of the amount of cocaine contained in the package he handled was insufficient to establish that the package contained 500 grams or more of cocaine. She argues that Agent Moratta "was a very, very poor estimator of weights and admitted on the witness stand that he had overestimated the weight of the sample of the cocaine he had

---

4. In addition to guilt on the substantive and the conspiracy counts, the verdict form required the jury to find specifically whether the amount involved with respect to each count was "over 500 grams" or "under 500 grams." With respect to each count, the jury found that the amount involved was "over 500 grams."

[taken from the package Cordero handed him] by forty-seven (47) times its actual weight." Even if Agent Moratta's estimate of the package's overall weight was trustworthy, she argues, Agent Moratta was no more able to say with certainty that the package he handled was filled solely with cocaine (rather than partially with uncontrolled filler substances) than was Ms. Roman able to say with certainty that the package she examined had contained only cocaine.

Cordero does not deny her post-arrest statements or dispute their effect upon the sufficiency of the evidence as to the quantity of cocaine.

### C.

The appropriate standard of review in cases challenging the sufficiency of evidence supporting a verdict of guilt is well established:

> Challenges to the sufficiency of the evidence are measured by the standard set forth in *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (*en banc*), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983), as follows: 'It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. A jury is free to choose among reasonable constructions of evidence.' In making this determination, we must view the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and accept reasonable inferences and credibility choices by the factfinder. *United States v. Gonzalez*, 719 F.2d 1516, 1521–22 (11th Cir.1983) [, *cert. denied*, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984) ].

*United States v. Holmes*, 838 F.2d 1175, 1176–77 (11th Cir.1988) (quoting *United States v. Rosenthal*, 793 F.2d 1214, 1225 (11th Cir.1986), *cert. denied*, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987)). Under this standard, the evidence was sufficient to support the jury's finding that a quantity of cocaine in excess of 500 grams was involved in this transaction.

The essence of Cordero's claim is that the government failed to prove that at least 500 grams of the 1000–gram contents of the package she handed to Agent Moratta was cocaine. That it contained some cocaine is not disputed; the sample Agent Moratta removed from the package was tested by the DEA chemist, who testified that it was eighty-four percent pure cocaine. Moreover, the jury was free to credit Agent Moratta's testimony—based upon his experience at DEA—that the package he handled was full and weighed one kilogram. Thus, even without the supporting testimony of the DEA chemist (that the package found in the wastepaper basket would have contained a kilogram of cocaine if full), the undisputed direct evidence was sufficient for the jury to find that Cordero handed to Agent Moratta a one-kilogram package that contained at least a two-gram sample of eighty-four-percent-pure cocaine.

Contrary to Cordero's claim the jury need not have drawn an inference on an inference to find that more than 500 grams of cocaine were involved. The jury was only required to make the single inference that the package Cordero handed to Agent Moratta contained mostly cocaine. We cannot say that the government's evidence was insufficient to support this inference.

Although Agent Moratta and Ms. Roman testified on cross examination that it was possible for a kilogram-size package offered by a seller as cocaine to be filled partially with some uncontrolled substance and that each had known of instances where this was the case, both testified that, in their experiences, such cases were very rare. Agent Moratta testified that reputable dealers avoid such chicanery in order to keep violence out of their transactions. This testimony, coupled with evidence of Cordero's own statements that she had destroyed the evidence and that it was "too bad" that the agents failed to recover the *other 5* kilos," was sufficient to support the inference that the package Cordero

handed to Agent Moratta contained more than 500 grams of cocaine.

Cordero introduced no evidence that the package contained less than 500 grams of cocaine or that it contained any uncontrolled fillers. Acceptance of her claim that the government must prove that it did not contain such fillers would place on the prosecution the burden of disproving every reasonable hypothesis of innocence. As we have repeatedly held, the government bears no such burden.

The judgment of the district court is hereby AFFIRMED.