[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10976
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cr-80055-RLR-6

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARC ELIE JEAN-CHARLES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 7, 2017)

Before HULL, WILSON, and ANDERSON, Circuit Judges.

PER CURIAM:

Marc Jean-Charles appeals his convictions and  sentence for conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (Count 1); conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count 2); attempted possession with intent to distribute less than 500 grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 (Count 3); conspiracy to use or carry a firearm in connection with a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c), (o) (Count 4); and carrying a firearm in connection with a crime of violence or drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 5).  On appeal, he argues: (1) the district court improperly restricted *voir dire* when the court rejected his question on racial prejudice and limited his questioning to 15 minutes; (2) the district court erred in precluding an entrapment defense; (3) there was cumulative error; and (4) the district court improperly calculated the drug amount and erred in applying enhancements for use of body armor and obstruction of justice.

We will address each claim in turn.

I

The method of conducting the *voir dire* is left to the sound discretion of the district court, and will be upheld unless there is an abuse of discretion.  *United States v. Miller*, 758 F.2d 570, 572 (11th Cir. 1985).  The district court's discretion

2

extends both to the decision whether or not to submit suggested questions to the jury, and to the decision whether to question prospective jurors collectively or individually. *United States v. Delval*, 600 F.2d 1098, 1102 (5th Cir. 1979). A district court's refusal of a defendant's request to inquire into racial matters constitutes reversible error only where the circumstances of the case indicate that there is a reasonable probability that racial or ethnic prejudice might have influenced the jury. *United States v. Dennis*, 786 F.2d 1029, 1045 (11th Cir.), *on reh'g*, 804 F.2d 1208 (11th Cir. 1986).

In *Rosales-Lopez v. United States*, the Supreme Court considered whether it was reversible error for the district court to reject the defendant's request that the court's *voir dire* inquire into the possibility of racial or ethnic prejudice against the defendant. 451 U.S. 182, 183 (1981) (plurality opinion). The Supreme Court concluded that while it is usually best to allow such a question from the defendant, the court need not defer to a defendant's request when there is no rational possibility of racial prejudice. *Id.* at 191 & n.7. In that case, the Supreme Court determined that there was no reasonable possibility that the jury was influenced by racial prejudice. *Id.* at 193. Among other reasons, the Supreme Court stated that the district court asked other questions to the jury to discover any racial bias. *Id.* at 193 & n.8.

In *United States v. Groce*, we held that there was no reasonable probability that racial prejudice influenced a jury.  682 F.2d 1359, 1362-63 (11th Cir. 1982). We reasoned that the defendants were charged with victimless drug crimes, and no issues involving racial prejudice were raised at trial.  *Id.* at 1362.  We also reasoned that the district court took steps to ensure that the jury panel would serve impartially through the court's opening remarks and individual questions to the jurors.  *Id.* at 1363.

In this case, there is no reasonable probability that the jury was influenced by racial prejudice.  Since Jean-Charles's offense involved a reverse-sting operation, there were no victims with whom the jury could sympathize.  Further, no issues of racial prejudice were raised at trial.  Thus, as in *Groce*, there was no reasonable probability that the jury was influenced by racial prejudice.  *Id.* at 1362-63.  Moreover, the district court took reasonable steps to ensure that any prejudice would be discovered.  *Id.* at 1363; *Rosales-Lopez*, 451 U.S. at 193 & n.8.  The district court gave Jean-Charles's counsel an opportunity to question the jury to discover whether the jurors would be fair and impartial, and instructed the jurors that they were not permitted to be influenced by prejudice or sympathy towards the defendant or the government.  Finally, the court did not abuse its discretion in allotting 15 minutes of questioning to defense counsel.  The district court's method of conducting *voir dire* is left to the sound discretion of the district court, including

4

whether or not to submit proposed questions to the jury. *Miller*, 758 F.2d at 572; *Delval*, 600 F.2d at 1102. Moreover, the district court allowed defense counsel to request time beyond the 15-minute allotment, but defense counsel did not request any additional time.

## II

The sufficiency of the defendant's evidence of government inducement regarding entrapment is a legal issue to be decided by the trial court. *United States v. Sistrunk*, 622 F.3d 1328, 1332-33 (11th Cir. 2010). Some of our opinions have applied a *de novo* review, while others have reviewed the question for an abuse of discretion. *See id.* at 1333 (noting the varying standards but declining to decide the appropriate standard of review, and holding that the result of the case was the same under either standard).

The affirmative defense of entrapment requires two elements: (1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant. *Id.* The defendant's right to present the entrapment defense is conditional because before an entrapment defense may be presented to the jury, the defendant must present an evidentiary foundation for a valid entrapment defense. *Id.* To meet this burden, a defendant may produce any evidence to raise a jury issue that the government's conduct created a substantial risk that the offense would be committed by a person other than one ready to commit it. *Id.* This

5

burden is light because a defendant is generally entitled to present a recognized defense to the jury where sufficient evidence exists for the jury to find in his favor. *Id.* Nevertheless, evidence of the government's mere suggestion of a crime or initiation of contact is not enough. *Id.* Instead, the defendant must present evidence of persuasion or mild coercion. *Id.* Such evidence includes evidence that the defendant had not favorably received the government's plan, that the government had to "push it" on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion the defendant refused to participate. *Id.* After the defendant meets his burden to show some evidence that the government induced the defendant to commit the crime, the question of entrapment becomes a factual one for the jury to decide. *Id.*

Finally, testimony that is fantastic, internally inconsistent, or speculative does not present a question for the jury. *United States v. Davis*, 809 F.2d 1509, 1513 (11th Cir. 1987).

In this case, under either standard of review, Jean-Charles failed to meet his burden of coming forward with sufficient evidence of government inducement. Jean-Charles's evidence of government inducement was his testimony contending that an unedited recording of the March 17, 2015, meeting showed that he walked away twice from Agent Michael Connors and that Agent Connors promised him a better life. However, the government's recording flatly contradicted Jean-

Charles's testimony.  The recording showed that Jean-Charles agreed to the robbery.  And there was nothing in the record indicating the existence of an unedited recording, rendering Jean-Charles's testimony fantastical.  *Davis*, 809 F.2d at 1513. Accordingly, the government's mere suggestion of the crime to Jean-Charles was not sufficient to establish evidence of government inducement. *Sistrunk*, 622 F.3d at 1333.

### III

We review for abuse of discretion the district court's decisions regarding the admissibility of expert testimony.  *United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004).  We also review a district court's decision to admit evidence for an abuse of discretion.  *United States v. Hill*, 643 F.3d 807, 840 (11th Cir. 2011). However, when a party raises an argument for the first time on appeal, we review the issue for plain error.  *United States v. Hughes*, 840 F.3d 1368, 1384 (11th Cir. 2016).  To establish plain error, a defendant must show there is (1) error; (2) that is plain; and (3) that affects substantial rights.  *Id.*  When all three requirements are met, we may exercise its discretion to recognize a forfeited error, but only if it seriously affects the fairness, integrity, or public reputation of the judicial proceedings.  *Id.* at 1384-85.

Under Fed. R. Evid. 702, an expert witness may testify if the witness's knowledge will help the trier of fact to understand the evidence or to determine a

fact at issue. Fed. R. Evid. 702. Additionally, Fed. R. Evid. 403 provides that the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Expert testimony is subject to Rule 403. *Frazier*, 387 F.3d at 1263.

It is well established that a jury serves no sentencing function. *Shannon v. United States*, 512 U.S. 573, 579 (1994). The principle that juries are not to consider the consequences of their verdict is a reflection of the basic division of labor between judge and jury. *Id.* Providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their fact-finding responsibilities, and creates a strong possibility of confusion. *Id.*

Under the cumulative-error doctrine, we will reverse a conviction when an aggregation of non-reversible errors yields a denial of the constitutional right to a fair trial. *United States v. Reeves*, 742 F.3d 487, 505 (11th Cir. 2014). However, where there is no error or only a single error, there can be no cumulative error. *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir. 2011). Additionally, there is no cumulative error when the defendant cannot establish that the combined errors affected his substantial rights. *United States v. Ladson*, 643 F.3d 1335, 1342 (11th Cir. 2011).

We reject Jean-Charles's argument that there was cumulative error. As noted above, the district court did not err in conducting the *voir dire* or in precluding an entrapment defense. Additionally, the district court did not err in admitting Officer Rey Paniagua's testimony and in restricting Agent Connors's testimony on how he chose the 20-kilogram drug amount. Because Jean-Charles objected to Officer Paniagua's testimony on the basis that his testimony was irrelevant, his challenge to the testimony under Fed. R. Evid. 403 as unfairly prejudicial is reviewed for plain error. *Hughes*, 840 F.3d at 1384. The court did not err in admitting Officer Paniagua's testimony because the expert testimony helped the jury understand how drug trafficking affects interstate commerce, how home invasion crews operate, and why the scenario presented in the reverse sting operation was realistic. Fed. R. Evid. 702. The testimony was also not unfairly prejudicial under Fed. R. Evid. 403 because Officer Paniagua's testimony did not implicate Jean-Charles in the offense. Additionally, the court did not err in precluding a question regarding how the 20-kilogram drug amount related to sentencing, because a jury serves no sentencing function, and the line of questioning may have confused the fact-finding issues for the jury. *Shannon*, 512 U.S. at 579.

Therefore, because there was no error, there can be no cumulative error. *Gamory*, 635 F.3d at 497. And, even if the court erred in admitting Officer

9

Paniagua's testimony, a single error does not establish cumulative error, and it did not affect Jean-Charles's substantial rights. *Id.*; *Ladson*, 643 F.3d at 1342. The evidence against Jean-Charles, which included a recording of the heist and him agreeing to the heist, was overwhelming.

## IV

We review for clear error the district court's underlying determination of the drug quantity attributable to the defendant. *United States v. Almedina*, 686 F.3d 1312, 1315 (11th Cir. 2012). With respect to Guidelines issues, including issues regarding an obstruction of justice enhancement, we review the district court's factual findings for clear error, and its application of the factual findings to the Sentencing Guidelines *de novo*. *United States v. Doe*, 661 F.3d 550, 565 (11th Cir. 2011); *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004). For a factual finding to be clearly erroneous, we must be left with the definite and firm conviction that a mistake has been committed. *Rodriguez-Lopez*, 363 F.3d at 1137.

For sentencing purposes, the government bears the burden of establishing the drug quantity by a preponderance of the evidence. *United States v. Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005). A member of a drug conspiracy is liable not only for his own acts, but also for the acts of others in furtherance of the activity that the defendant agreed to undertake and that are reasonably foreseeable in

connection with that activity.  U.S.S.G. § 1B1.3(a)(1)(B).  A defendant is liable for drug quantities possessed by other participants if the transaction was in the scope of, and in furtherance of, the jointly undertaken criminal activity, and was reasonably foreseeable in connection with that criminal activity.  *Id.*, comment. (n.3(C)).  In a reverse sting operation, the agreed-upon quantity of the controlled substance more accurately reflects the scale of the offense.  U.S.S.G. § 2D1.1, comment. (n.5).

U.S.S.G. § 3C1.1 provides for a two-level enhancement if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing.  U.S.S.G. § 3C1.1.  Such conduct includes providing materially false information to a judge or magistrate judge.  *Id.*, comment. (n.4(F)).

U.S.S.G. § 3B1.5 provides for a two-level enhancement if the defendant was convicted of a drug trafficking crime or a crime of violence, and the offense involved the use of body armor.  U.S.S.G. § 3B1.5(1), (2)(A).  By contrast, § 3B1.5(2)(B) provides for a four-level enhancement if the defendant himself used body armor.  *Id.* § 3B1.5(2)(B).  "Use" is defined as the active employment of the body armor to protect the person from gunfire, and not mere possession.  *Id.*, comment. (n.1).  We interpret the Guidelines so that no words are discarded as

11

being meaningless, redundant, or mere surplusage.  *United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003).

In this case, the court did not err in calculating the drug amount or in applying enhancements for use of body armor and obstruction of justice.[1]  With respect to the drug quantity amount, Agent Connors told Jean-Charles that the heist involved 20 kilograms of cocaine.  Thus, it was reasonably foreseeable to him that the jointly undertaken criminal activity would involve 20 kilograms of cocaine, and, under the Guidelines, that amount governs the drug quantity amount. U.S.S.G. § 1B1.3(a)(1)(B), comment. (n.3(C)).  And, in a reverse-sting operation, the agreed-upon quantity of the controlled substance more accurately reflects the scale of the offense.  U.S.S.G. § 2D1.1, comment. (n.5).  Moreover, Jean-Charles's argument, that the jury found that he was responsible for less than 500 grams of cocaine, is inapposite, because the jury also found that it was reasonably foreseeable to Jean-Charles that the conspiracy involved more than five kilograms of cocaine.

Additionally, the district court did not err in imposing an obstruction of justice enhancement.  Jean-Charles testified during the motion *in limine* hearing

---

[1] Although the government argues that any error in the court's Guidelines calculation was harmless because Jean-Charles was sentenced to the mandatory minimum, the district court did not sentence Jean-Charles to the mandatory minimum in this case.

that the government's video had been edited to delete portions in which Jean-Charles walked away after Agent Connors asked him to agree to the robbery, and that Agent Connors promised him a better life. However, the government's recording flatly contradicted that testimony, and there was no evidence of an unedited video. The magistrate judge found that Jean-Charles's testimony was "incredible." Accordingly, the court did not err in applying the enhancement for providing materially false testimony to the magistrate judge. U.S.S.G. § 3C1.1, comment. (n.4(F)).

Finally, with respect to the body armor enhancement, it was reasonably foreseeable to Jean-Charles that the offense involved the use of body armor. U.S.S.G. § 1B1.3(a)(1)(B) (stating that a defendant is responsible for the acts of others in furtherance of the activity that the defendant agreed to undertake, and that are reasonably foreseeable in connection with that activity). During the March 17 meeting, a co-conspirator stated that everyone knew the plan, which involved donning police vests and handcuffing the armed guards. Thus, it was reasonably foreseeable to Jean-Charles that the offense involved the use of body armor, even though Jean-Charles himself did not use the armor. U.S.S.G. § 3B1.5(1), (2)(A). Construing § 3B1.5(2)(A) to require that the defendant himself use the body armor would render § 3B1.5(2)(B) redundant. *Fuentes-Rivera*, 323 F.3d at 872.

V

13

We may *sua sponte* raise the issue of clerical errors in the judgment and remand with instructions that the district court correct those errors. *See United States v. James*, 642 F.3d 1333, 1343 (11th Cir. 2011) (remanding to correct clerical error in judgment regarding statute of conviction); *United States v. Massey*, 443 F.3d 814, 822 (11th Cir. 2006) (same).

With regard to Count 1, the written judgment describes a conviction for Hobbs Act robbery; however, Jean-Charles was charged in the indictment and convicted of conspiracy to commit Hobbs Act robbery.  With regard to Count 3, the written judgment states a violation of 21 U.S.C. § 841(b)(1)(A); however, since the jury found him responsible for less than 500 grams of cocaine for this count, the statute of conviction is 21 U.S.C. § 841(b)(1)(C) instead.  *See United States v. Cordero,* 860 F.2d 1034, 1035 n.2 (11th Cir. 1988) (citing § 841(b)(1)(C) for an offense involving less than 500 grams of cocaine).  With regard to Count 5, the written judgment describes a conviction for carrying a firearm in connection with a crime of violence; however, Jean-Charles was charged in the indictment and convicted of carrying a firearm in connection with a crime of violence or a drug trafficking crime.

Accordingly, we AFFIRM Jean-Charles's convictions and total sentence, and REMAND to correct the following clerical errors in judgment: (1) Count 1 should read "Conspiracy to commit Hobbs Act Robbery," (2) Count 3 should read

"21 USC 841(a)(1), 841(b)(1)(C) and 846," and (3) Count 5 should read "Carrying a Firearm in connection with a Crime of Violence or Drug Trafficking Crime."

**AFFIRMED IN PART, REMANDED IN PART.**[2]

---

[2]    Jean-Charles's *pro se* motion for appointment of substitute counsel is DENIED. Jean-Charles's counseled motion to amend his initial brief is DENIED. *See United States v. Durham,* 795 F.3d 1329, 1330 (11th Cir. 2015) (*en banc*) (citing rule that an appellant who does not raise an issue in his initial brief may not do so in a reply brief or a supplemental brief).

15