[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10646

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOAQUIN RIVERO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:98-cr-00023-JAL-2,
1:00-cr-00220-JAL-1

2                    Opinion of the Court                    23-10646

_____

_____

No. 23-10923

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

JOAQUIN RIVERO,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:00-cr-00220-JAL-1,
1:98-cr-00023-JAL-2

_____

Before WILSON, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Defendant-Appellant Joaquin Rivero appeals his 168-month sentence for conspiracy to possess with intent to distribute cocaine, contempt of court, and failure to appear. Rivero argues that the government violated a term of his plea agreement. According to Rivero, the district court also erred in applying a firearms enhancement and denying safety-value relief, and his sentence is unreasonable. After careful review, we affirm.

## I.

In 1998, a federal grand jury charged Rivero with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1), and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count 2). After pleading not guilty, the court released Rivero on bond.

Pursuant to a written plea agreement, Rivero agreed to plead guilty to Count 1 with the understanding that the government would seek dismissal of Count 2 at the time of sentencing. In the agreement, he agreed to forfeit $37,700 found in his home because the money "constitute[d] or was derived from proceeds, obtained directly or indirectly, as a result of a violation of 21 U.S.C. §§ 846 and 841(a)(1), and/or was used or intended to be used to commit or to facilitate the commission of the said violation." The plea agreement also included that the government would recommend safety valve relief if Rivero was found to not "have possessed a firearm or other dangerous weapon in connection with the offense." At the change-of-plea hearing, the district court placed

Rivero under oath, and Rivero confirmed that (1) he understood the charge against him, (2) the prosecutor's facts of the case were correct, and (3) he did not have any changes to the facts.

Relevant to this appeal, drug task force officers observed drugs being moved from a Cadillac to another car in a parking lot.[1] Officers then identified the address to which the Cadillac was registered, surveilled the address, and watched Rivero drive away from the address in the Cadillac. The officers stopped Rivero, and he consented to the search of his residence. During the search, agents found additional kilograms of cocaine in a storage shed behind Rivero's residence. In the storage shed with the cocaine, the agents found scales, drug packaging materials, drug mixing agents, and other paraphernalia having to do with drug distribution. The agents also found $37,700 in his house and four guns in a bedroom drawer in his house.

Rivero was arrested. He subsequently told the agents that he possessed the cocaine for about four to five days and that it had been brought to his house by a person known to Rivero as "German" with instructions for Rivero to hold the cocaine until contacted. Rivero confirmed that he gave 14 kilograms of cocaine to another person. He told the agents that the cocaine paraphernalia and scales found in the shed on his property belonged to him and that he had been involved with distributing cocaine for about 1 to

---

[1] The officers continued surveilling the car until two people got into the car and left. The officers pulled over the vehicle and those in the car consented to a search of the car, which contained 14 kilograms of cocaine.

1½ years.  He also stated that he had been told he would be given $300 per kilogram for holding the cocaine at his residence.

After discussing the forfeiture and possible safety-valve relief, Rivero confirmed that: the plea agreement was read to him before he signed it; he signed it; he fully discussed the agreement with his attorneys before signing it; he understood all the terms of the agreement before signing it; and the terms summarized by the court were the terms of his plea agreement with the government as he understood them.  The government recommended that Rivero remain on bond pending sentencing, which the court allowed.

A presentence investigation report (1998 PSI) indicated the application of a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) based on the four firearms found in his house.  The 1998 PSI also found Rivero ineligible for safety-valve relief under U.S.S.G. § 5C1.2.  Rivero objected to the two-level enhancement, saying there was no connection to the offenses that he committed because all the drugs and drug paraphernalia were found in a shed in the back of his residence that was detached from his house and that the weapons were found in his bedroom.  He stated that, when he entered into the plea agreement, both parties contemplated that he would receive the benefits of the safety valve, as shown by the language in the plea agreement.  The government opposed.

At his sentencing hearing in June 1998, Rivero failed to appear, and a warrant was issued for his arrest.  In March 2000, a federal grand jury charged Rivero in a new indictment with contempt

of court, in violation of 18 U.S.C. § 401(3), and failure to appear, in violation of 18 U.S.C. § 3146.

For over twenty years, Rivero lived in Costa Rica. But in February 2020, Rivero was arrested while traveling through an airport in Panama City, Panama. He was returned to the Southern District of Florida where he first pled not guilty to the 2000 indictment. But without a plea agreement as to the 2020 charges, Rivero later agreed to pled guilty to both counts, and the district court accepted his plea. The cases were consolidated for sentencing purposes.

The new PSI (2020 PSI) described the conduct underlying the 1998 conviction as detailed above but expanded on where the money was found in Rivero's house and clarified that the shed where the cocaine was found had been unlocked. Additionally, the 2020 PSI said that officers found four handguns: a Smith & Wesson semi-automatic firearm with a clip and 12 nine-millimeter bullets; two .38 caliber Smith & Wesson firearms and two brown holsters; and a .38 caliber long barrel Rossi firearm in a dresser in Rivero's master bedroom. The 2020 PSI also detailed Rivero's fleeing from Florida, his over twenty years in Costa Rica, and his arrest in the Panama City airport.

Like the 1998 PSI, the 2020 PSI stated that Rivero was not eligible for the safety-valve reduction because he was found in possession of four firearms at his residence, which is also where drugs and paraphernalia were stored. Based on a total offense level of 36

and a criminal history category of I,[2] Rivero's guideline imprisonment range was 188 to 235 months.  Pursuant to U.S.S.G. § 2J1.6, if sentencing for the 2000 indictment was imposed on the failure to appear conviction, it must run consecutively to any other sentence of imprisonment.

As he had done in 1998, Rivero again objected to the statement that he was not eligible for safety-valve relief.  He objected to the two-level enhancement based on the four firearms.  He requested a downward variance and a 26-month term of imprisonment because he had a low criminal history score, was raised in an orphanage in Cuba, was a father to four children, was low risk for recidivism, was 86 years old, and suffered from multiple serious health conditions.

The court held three separate sentencing hearings.  At the first one, Rivero sought to correct several alleged factual errors in his 1998 PSI to which he had agreed in his plea agreement and during his 1998 change-of-plea hearing.  The government argued that he was precluded from doing so.

At the second hearing, the district court found that precedent precluded it from considering facts conflicting with statements made during the 1998 Rule 11 guilty plea colloquy and contained in the plea agreement.  The court found that his objections

---

[2] Starting with a base offense level of 32, the 2020 PSI added a two-level enhancement for possession of firearms and two levels for willfully obstructing justice.

to the facts previously admitted in the Rule 11 guilty plea colloquy and contained in the plea agreement lacked merit. The government did not need to present evidence because those facts were admitted by Rivero—the $37,700 recovered in the house was drug proceeds.

At the third hearing, the district court heard arguments on Rivero's objection to the firearms enhancement, again highlighting the location of both the drugs (the shed) and guns (master bedroom). The court found that the government met its initial burden to show that Rivero possessed guns based on the factual proffer at the 1998 Rule 11 hearing and the undisputed PSI findings that there were four firearms present at the site of the charged conduct. After considering Rivero's arguments, the court found that Rivero did not meet the burden required to demonstrate that a connection between the four firearms and the offense was clearly improbable.

The court next heard arguments on the safety-valve objection. Rivero again argued that his participation in the offense did not involve guns and that there was no evidence in the record that the guns were actually possessed in connection with the case or used during the case. The government argued that it was still probable that the guns were used in connection with the charged conduct for protection of the cash and the property generally where the drugs were stored.

The court admitted that "it [was] a difficult question," but found it probable that the guns possessed by Rivero were possessed in connection with the offense. The district court stated that "[t]he

drugs were found on the property in the shed. This was his residence, the total property, and he has admitted that the cash was from trafficking. I have no choice [but] to say that he does not qualify for the safety valve."

After confirming Rivero's guideline range was 188 to 235 months, the court heard from Rivero where he allocuted and apologized for absconding. The government recommended a sentence of 200 months' imprisonment and emphasized that Rivero chose to flee rather than accept responsibility for his actions in 1998.

The court sentenced Rivero to 168 months total imprisonment, 162 months attributed to the drug trafficking offense and 6 months each for the failure to appear and criminal contempt of court offense, to run consecutively to the 1998 count and concurrently with each other. The court said that it considered the 18 U.S.C. § 3553(a) factors and the facts and circumstances of Rivero's case, as well as Rivero's history and characteristics, the nature and circumstances of Rivero's offense. Rivero timely appealed.

## II.

Rivero first argues that the government violated a term of the plea agreement when it argued that he was not safety-valve eligible under 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2(a)(2). Second, he argues that the district court erred in determining that U.S.S.G. § 2D1.1(b)(1)'s firearms enhancement applied to his drug offense level. Third, he argues that the district court erred in denying safety-valve relief pursuant to 18 U.S.C. § 3553(f)(2) and U.S.S.G. § 5C1.2(a)(2). Fourth, he argues that his 168-month total

sentence is unreasonable. We will address each of his challenges in turn.

*A.*

To begin, the government contends that Rivero's argument that the government breached the plea agreement is subject to plain error review because he failed to object before the district court. While we ordinarily review the alleged breach of a plea agreement de novo, the government is correct in that we review only for plain error if the issue was not raised below. *United States v. Malone*, 51 F.4th 1311, 1318 (11th Cir. 2022).

Rivero asserts that he properly raised the objection, but a review of the record belies that argument. Although Rivero argued against the enhancement and in support of safety-valve relief, he never argued to the district court that the government breached the plea agreement or asked to hold the government to its promise. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (explaining the defendant cannot preserve an argument by raising facts underlying the argument if the facts were presented under a different legal theory).

Thus, plain error applies and occurs where there is: "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and if the first three prongs are met, then a court may exercise its discretion to correct the error if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013) (quotations omitted and alterations adopted). We have

held that the government's failure to abide by the plain text of a plea agreement can satisfy the first two prongs of the plain error test. *See Malone*, 51 F.4th at 1321.

Here, we find that no plain error occurred when the government refused to recommend that Rivero receive safety-valve relief. Rivero's case is similar to our decision in *United States v. Mahique*. 150 F.3d 1330 (11th Cir. 1998). There, the government "agreed not to oppose Mahique's request to be sentenced under the safety-valve provision 'if he is eligible, and the Court makes appropriate findings regarding the criteria.'" *Id*. at 1331. But at sentencing, the government opposed the safety valve relief because Mahique fled the jurisdiction and retracted several admissions he made during his prior confession, and we found that "[t]he government did not breach the plea agreement." *Id*. at 1331–32. The government's promise in the plea agreement not to oppose Mahique's request to be sentenced under the safety-valve provision was conditioned on him being eligible for the provision and the district court finding that he met all criteria for application of the provision. *Id*. at 1332.

Here, the agreement said that the parties would jointly recommend safety-valve relief provided that Rivero was not found "to have possessed a firearm or other dangerous weapon in connection with the offense." Although the language in this plea agreement differs somewhat from the agreement in *Mahique,* the recommendation of safety-valve relief was conditional on Rivero not having been found to possess a firearm in connection with his offense. And here, both probation via the 2020 PSI and the district court

found Rivero possessed a firearm, so the government was not required to make the recommendation for safety-valve relief.

Thus, it was not plain error for the district court not to find that the government breached the plea agreement by arguing against safety-valve relief.

*B.*

"Whether a defendant possessed a firearm for purposes of § 2D1.1(b)(1) is a factual finding that we review under the clear-error standard." *United States v. George*, 872 F.3d 1197, 1204 (11th Cir. 2017). For a finding to be clearly erroneous, we "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation marks omitted).

The Sentencing Guidelines provide for a two-level enhancement in drug cases "[i]f a dangerous weapon . . . was possessed." U.S.S.G. § 2D1.1(b)(1). The commentary for § 2D1.1(b)(1) provides[3] that "[t]he enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was

---

[3] We have held that a sentencing court may consider the Sentencing Commission's interpretation of a Guideline as contained in the Commentary to the extent that a Guideline is "genuinely ambiguous." *United States v. Dupree*, 57 F.4th 1269, 1274 (11th Cir. 2023) (en banc). Neither Rivero nor the United States makes any argument about whether the Guideline is ambiguous or whether the district court properly relied on the commentary in applying this enhancement. Thus, we leave whether U.S.S.G. § 2D1.1(b)(1) is ambiguous for another day. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).

connected with the offense.  For example, the enhancement would not be applied if the defendant, arrested at the defendant's residence, had an unloaded hunting rifle in the closet."  U.S.S.G. § 2D1.1, comment. (n.11(A)).

"To justify a firearms enhancement, the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction." *United States v. Stallings*, 463 F.3d 1218, 1220 (11th Cir. 2006).  We have recognized that close proximity between weapons and drugs alone is sufficient for the government to meet its initial burden under § 2D1.1(b)(1).  *United States v. Carillo-Ayala*, 713 F.3d 82, 91–92 (11th Cir. 2013).  The presence of the weapon cannot be merely coincidental, and it must have some purpose or effect to the offense.  *George*, 872 F.3d at 1204.  Evidence that a defendant used or could have used a weapon to protect his criminal activity is sufficient to show a connection between the weapon and the offense and will thus satisfy the government's burden under § 2D1.1(b)(1).  *See Carillo-Ayala*, 713 F.3d at 92.

If the government meets its initial burden, the burden shifts to the defendant, who has the opportunity to show that a connection between the weapon and the offense was "clearly improbable."  *Stallings*, 463 F.3d at 1220.  Failure to produce such evidence permits a district court to apply the enhancement.  *United States v. Hall*, 46 F.3d 62, 63–64 (11th Cir. 1995) (per curiam).  The guidelines impose a heavy burden to negate the connection and show that it

is clearly improbable. *Carillo-Ayala*, 713 F.3d at 90; U.S.S.G. § 2D1.1, comment. (n.11(A)).

Here, the district court did not err in imposing a firearm enhancement under § 2D1.1(b)(1). First, Rivero kept guns at his house, and he received and stored drugs on the property—in the shed, based on the search of his property and his objections to the PSI—on which the house was located. The guns were also found near the money that Rivero admitted was drug proceeds. Rivero also said that he received several kilograms of cocaine at his property from German. Then on the day of his arrest, Rivero, at the direction of German, removed 14 kilograms of cocaine from his property and delivered it to German.

The record shows that Rivero kept both drugs and drug money on the same premises as his guns. This evidence alone was sufficient for the government to meet its burden under § 2D1.1(b)(1) by showing the guns were located at the site of the offense conduct. Although Rivero argues that the house and the shed are distinct locations, this argument is unavailing because he could have used the firearms in his house to protect the drugs or the drug money on his property, regardless of whether they were located in the house. *Carillo–Ayala*, 713 F.3d at 94–95. We have also rejected a similar argument and affirmed the same enhancement (1) where a firearm found in the office area of a warehouse was present at the site of the conduct, (2) when cocaine was found "nearby in and around the warehouse" and (3) where drug

23-10646                Opinion of the Court                15

transactions took place on warehouse premises.  *United States v. Trujillo*, 146 F.3d 838, 847 (11th Cir. 1998).

Next, the district court did not err in finding that Rivero failed to show that a connection between the guns and the cocaine was clearly improbable.  Again, despite the drugs being kept in the shed, Rivero admitted that the cash was drug proceeds which was kept near the guns.  So it is not clearly improbable that the guns were kept to protect the drug proceeds.  And although Rivero asserts that he possessed the guns before his involvement in drug trafficking, he still failed to show why he would not also keep them to protect the drugs or drug money on his property.[4]  *See id.*

Thus, the district court did not err in applying the two-level firearm enhancement.

## C.

A district court's factual findings and subsequent denial of safety-valve relief are reviewed for clear error.  *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).

For an offense violating 21 U.S.C. § 841, the safety-valve provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 enable a district court to disregard the statutory minimum sentence if five requirements are met.  Relevant here, the second requirement for

---

[4] Rivero also argues that the government's return of the firearms to him shows that it did not think the guns had a connection to Rivero's drug trafficking. But as the government notes, it was hard to verify the accuracy of this statement twenty-five years later.

safety-valve relief is that the defendant did not possess a gun "in connection with the offense." 18 U.S.C. § 3553(f)(2); U.S.S.G. § 5C1.2(a)(2). Rivero has the burden of showing that he meets the five factors for relief by a preponderance of the evidence, and that it is more likely than not that he did not possess a firearm in connection with the offense. *See Carillo-Ayala*, 713 F.3d at 90.

In considering the safety-valve, this court has held that "[a] firearm found in close proximity to drugs or drug-related items simply '*has*'—without any requirement for additional evidence—the potential to facilitate the drug offense." *Id.* at 92. "A defendant seeking relief under the safety valve, despite his possession of a weapon found in proximity to drug-related items, will have a difficult task in showing that, even so, there is no connection with the drug offense so the safety valve applies." *Id.* We also explained that:

> [w]hile other facts, such as whether the firearm is loaded, or inside a locked container, might be relevant to negate a connection, there is a strong presumption that a defendant aware of the weapon's presence will think of using it if his illegal activities are threatened. The firearm's *potential* use is critical. The Sentencing Commission gives special status to guns found in proximity to drugs.

*Id.*

"[N]ot all defendants who receive the enhancement under § 2D1.1(b)(1) are precluded from" safety-valve relief. *Id.* at 91. If the enhancement applies but the defendant also seeks safety-valve

relief, "the district court must determine whether the facts of the case show that a connection between the firearm and the offense, though possible, is not probable." *Id.* (quotation marks omitted). But "[t]he number of defendants who meet both guidelines will undoubtedly be rare." *Id.*

Here, the district court correctly made individual findings and addressed the different standards for the § 2D1.1(b)(1) enhancement and § 5C1.2(a)(2)'s safety-valve relief. The district court also noted that the question of whether safety-valve relief applied was a difficult one.

Thus, the district court did not clearly err in finding that Rivero failed to meet this burden. In attempting to establish that he did not possess a firearm "in connection with" the charged drug offenses, Rivero largely repeats the arguments used in opposition to the firearm enhancement. Rivero points to the guns being inside his bedroom away from where the drugs were found (in the shed) and that he had possessed the firearms for years before he began his drug activities. Although the burden is lower, these arguments still fall short for reasons explained above. Even though Rivero has pointed to *some* evidence that might call into question the presence or purpose of his firearm, he has not shown that it is "more likely than not" that firearms found in his bedroom near the money from his drug proceeds was not possessed "in connection with" his drug sales.

The district court reiterated Rivero's admission that the money found in his bedroom was the proceeds of drug trafficking.

It is a permissible view of the evidence that Rivero possessed the gun in part to protect himself and his drug proceeds and that the gun was thus possessed in connection with the offense. *See United States v. Smith*, 821 F.3d 1293, 1302 (11th Cir. 2016) ("Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be clearly erroneous." (quotation marks and alteration omitted)).

Because the guns were found in a house where drugs and money were also found on the property, the record does not leave us with "a definite and firm conviction that a mistake has been committed" by the district court in denying Rivero safety-valve relief. *See Rodriguez-Lopez*, 363 F.3d at 1137.

## D.

When reviewing the procedural and substantive reasonableness of a sentence, we apply a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

To determine whether a sentence is procedurally reasonable, we ask whether "the district court: (1) properly calculated the Guidelines range; (2) treated the Guidelines as advisory; (3) considered the 18 U.S.C. § 3553(a) factors; (4) did not select a sentence based on clearly erroneous facts; and (5) adequately explained the chosen sentence." *United States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010).

We will consider a sentence substantively unreasonable only if "we are left with a definite and firm conviction that the district court committed a clear error of judgment in weighing the

§ 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted). A district court abuses its discretion when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *Id.* at 1189 (quotation marks omitted). "A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence." *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014).

As discussed above, the district court did not err in calculating Rivero's sentence. The court also treated the guidelines as advisory, considered the 18 U.S.C. § 3553(a) factors, did not select a sentence based on clearly erroneous facts, and adequately explained the chosen sentence. Therefore, Rivero's sentence is not procedurally unreasonable.

Rivero fails to meet his burden to show that his 168-month total sentence is substantively unreasonable as the district court did not abuse its discretion in weighing the § 3553(a) factors, including the relevant offense conduct and conduct surrounding his obstruction of justice enhancement. Further, Rivero's sentence was below the Guidelines range and the statutory maximum penalty.

**III.**

As a result, the government did not breach Rivero's plea agreement. Under the plain error standard, Rivero cannot show

that the government failed to abide by the plain text of the agreement regarding the safety-valve recommendation. Next, the district court did not clearly err in applying the two-level firearm enhancement because the guns were found in the house with the money that Rivero admitted constituted drug proceeds and illegal drugs were found on the same property. Additionally, the court did not clearly err in finding that Rivero did not qualify for safety-valve relief because it was probable that Rivero possessed guns in connection with his offense conduct. Lastly, Rivero's total sentence is neither procedurally nor substantively unreasonable. Thus, we affirm Rivero's convictions and sentences.

**AFFIRMED.**